YATES *v.* GRIDER.

[No. 369A50. Filed November 4, 1969. No petition for rehearing filed.]

*James R. Martin,* of Kokomo, for appellant.

*Roger L. Miller, Robison & Robison,* of Frankfort, for appellee.

SHARP, J.—This is an action for personal injuries sustained by Plaintiff-Appellant resulting from the alleged negligence of the Defendant-Appellee, Wilbur Grider. Trial was had by jury resulting in a verdict for Appellee. The only assignment of error is overruling the Appellant's Motion for New Trial which stated:

"1. The verdict of the jury is contrary to law.

2. Error of law occurring at the trial in that the court erred in sustaining the defendant's objection and excluded the following evidence offered by plaintiff on cross-examination of Loren B. Ayres, an expert witness who was called to testify by the defendant, which said evidence is set forth herein:

Q. Mr. Ayres, will you or can you tell the jury who hired you to make this investigation on April 6, 1967?
A. Yes sir.

Q. And who was that?

A. Mr. E. J. Rhoda.

Q. And will you spell his name?

A. R-h-o-d-a.

Q. All right, and will you tell the jury who he is, is he working for himself or someone else?

Mr. Robison: We will object to this because, in the first place counsel knows who Mr. Rhoda is and in the second place, this is an improper question that he asks this witness and I would like to make the rest of the argument out of the presence of the jury, if I may.

Judge: The same is noted. (The jury is excused)

Mr. Robison: If the Court please, the conduct of counsel of plaintiff from the inception from the beginning of talking to the jury has tried to inject insurance into this case which they know is not proper. On voir dire of the jury they asked about a Mr. Innis who they said would be a witness to this trial. When they concluded their testimony; they knew full well that they weren't going to call Mr. Innis, yet they knew that the jury knew who Mr. Innis was because one of the jury members had purchased some insurance from him and knew that he sold insurance. We asked at that time that the submission of this be removed. We were overruled. Now, at this time this witness was asked who asked him to come and testify which was our law firm—our office. Now they are asking who originally asked him to come and investigate this thing. They asked him the gentleman's name. Mr. Rhoda. They knew who Mr. Rhoda is as well as we know who Mr. Rhoda is. He is an adjuster for an insurance company. Now, once again Mr. Martin deliberately and I imagine with malice, intends to inject into this trial something that he knows he has no business doing. Mr. Martin, through the entire proceedings, has been ungentlemanly, unfair and now this is the topper and I think that he deserves a reprimand from this Court for his conduct. It's unbecoming his profession.

Mr. Martin: Well, your Honor, I have not, in the course of these proceedings, tried to do anything improper or unethical or ungentlemanlike—I'll leave all of that phraseology off, but I think we are entitled to know that Mr. Ayres here is testifying—not testifying—excuse me,—he made his investigation for and on behalf of the Town and Country Mutual Insurance Company. Now I think we have a right and the jury has a right to know that information to show

any bias or prejudice or interest that he may have here and I just picked up again this morning a recent Supreme Court decision—I don't have the full case authority, but it reported and I am not relating to the Court that newspapers are often correct, but just another Supreme Court decision this morning handed down in our own Supreme Court yesterday stated that a person went out to make a brake test for an insurance company and he testified and on cross-examination he was asked who he made this for and the Court stated that he couldn't ask this question and it was found to be reversible error and that's what the Court did and that was the basis for the Court's opinion. This is a decision just handed down yesterday by the Supreme Court. I've got the newspaper here with me—I've still got it but I'm not skinning but, don't misunderstand me, your Honor, I am not saying the newspaper articles are always right and this is absolute citation. I just read it in—our own Supreme Court—Indiana Supreme Court—no others. But I think the jury is entitled to know as to any bias that this witness may have in his testimony.

Judge: The bias and prejudice which is shown by the fact that he is in fact employed by defendant's counsel. This does show bias.

Mr. Martin: Well my question was made in reference to his investigation—not his testimony here.

Judge: Well, but this is intended to show bias in favor of whom?

Mr. Martin: Well it would be in favor of the defendant if I understand the Court.

Judge: Then the insurance company is not the defendant.

Mr. Martin: No, they are not the defendant here—no.

Judge: Then the bias which you seek is against the party not in this case.

Mr. Robison: That's it exactly.

Judge: Is this not true?

Mr. Martin: No, I don't thing that's true altogether.

Judge: I am resting for the bias in favor of whom. This testimony which you both elicit will be enhanced or increased more than it is already. The statement was in the beginning that he was employed by the defendant.

Mr. Martin: To testify—if I recall correctly.

Judge: His testimony is upon the basis of investigation.

Mr. Martin: Yes.

Judge: Yet, an opinion for an investigation made for a party not a party to this law suit.

Mr. Martin: Well, I don't think, necessarily a bias or prejudice of a witness has to be for or against either party, I think we can show—

Judge: (inaudible) around with cross-examination unless it is relevant and material to the parties.

Mr. Martin: Well I don't agree with the Court on that.

Judge: I can give you the citations on it.

Mr. Martin: Your Honor, I think we should be allowed to ask this witness who employed him in fact in his investigation to show any motives or interest or feelings or any contractual relationship with reference to his part in this litigation, who compensates him and who has given him anything of value regarding his testimony. Now I am not only making reference to his investigation but also who is compensating him for his testimony.

Mr. Robison: He's already told us that.

Mr. Martin: I didn't hear that. But I think we are entitled to ask this and I haven't attempted, again, to do anything improper before this Court.

Judge: Counsel may respond.

Mr. Robison: I would be obliged if he would merely show us an authority and where it's never been done before and I think it's such a—we didn't even anticipate this is something from the primary beginning in law school, the only way to inject insurance in this is by the examination of— do you—are you a stockholder or a purchaser of certain insurance. That's basic. They went further this time. They asked if you were a stockholder in a mutual company and they proceeded to ask if they knew Mr. Innis and they knew that people knew he was an insurance man and now they are compounding the felony by trying to get in here that they don't know who Mr. Rhoda is and they know just as well as I do who Mr. Rhoda is, and they are trying to prejudice the testimony of the witness for the reason that he is testifying for an insurance company. All they want to project to this jury is that there is an insurance company involved. That's the only thing they hope to do.

Mr. Martin: Your Honor, could I say something?

Judge: Yes.

Mr. Martin: Would it aid the Court any if I went down to Indianapolis and got a copy of this opinion? I would be glad to.

Judge: The question of the binding nature of an opinion rendered yesterday upon a fact situation about which we know nothing is asking a great deal of the Court, Mr. Martin. Now if you are absolutely sure that it's a cow case.

Mr. Martin: Well, let me put it this way. It's a cow case from the article in the morning paper. Now I will be the first to admit, your Honor, and don't misunderstand me, I will be the first to admit that what appears to be a cow case in the newspaper often turns out to be a hog.

Judge: It would be a complete reversal of field in the State of Indiana.

Mr. Martin: Well, as I say, I would be willing to drive to Indianapolis now to get it.

Judge: I am going to overrule—or I am going to sustain the objection and I am going to stand on what I know the laws to be. Now when and if the Indiana Supreme Court and the United States Supreme Court say that the real party in interest becomes relevant but until it is, it is irrelevant. Skid marks a curve. Casey Stengel instructs his pitcher to throw a curve. The witness is bias because he doesn't like Casey Stengel. Bias?—Bias against the curve and he has even bet and lost money on the Yankees or the men. Bias and prejudice but it's irrelevant unless it's the real party in interest. Now by laws you have not made the insurance company the real party's interest and all of us present know that they may be but public policy has been exemplified in the law that there is more danger from making the big pocket the real party interest than there is putting the parties on equal plains. Was your Dr. Ferguson entirely paid by your client or plaintiff's insurance company?

Mr. Martin: Are you asking me?

Judge: Yes.

Mr. Martin: Well I got a bill from him.

Judge: (Inaudible)

Mr. Martin: No, I'm not evading it. There's no plaintiff's insurance company involved here.

Judge: What about Blue Cross?

Mr. Martin: No. You mean did he have Blue Cross?

Judge: I believe there is mentioned in here of plaintiff's

insurance company in one of these depositions. There's a subrogation claim from Blue Cross isn't there?

Mr. Martin: There may well be. I thought you mean an automobile insurance carrier.

Judge: I'm speaking of (inaudible).

Mr. Martin: I see.

Judge: You see, we open the entire field of insurance on plaintiff's side.

Mr. Robison: We would like to. I feel that if he goes any further with this we have got to protect ourselves—go into Blue Cross and tell just what kind of out-of-pocket expense this man is talking about.

Mr. Martin: I won't go any further, your Honor, if you are telling me not to.

Judge: Well, this is the problem, see. This is the reason for for the rule, or has been up to today.

Mr. Robison: Disability insurance—Social Security—and I feel if he can—we really should be going into that because of the way they have treated us.

Judge: This is the problem. This is the reason for the rule and we all know it and one time it favors the plaintiff and the other time it favors the defendant. If we're going to break it we'll about have to break it all the way. This is why I'm going to wait and see what the United States Supreme Court does with the case to which you refer because I assume the deep pocket will take it on up, don't you.

Mr. Martin: Probably so.

Judge: And you wouldn't want me to rule, would you?

Mr. Martin: Well I think I'm right. I sincerely feel I'm right on this point and I am not trying—

Judge: I expect Mr. Robison, when he is in the plaintiff's trial, in the Trial Lawyers Association, may be in that direction too, but it still (inaudible) the parties are before us, the plaintiffs and the defendants.

Mr. Martin: Could I make my offer to prove though, first, your Honor, before the jury gets here?

Judge: Plaintiff requests leave to make his offer to prove. The Court has now sustained the objection of the defendant. Counsel for the plaintiff may make his offer to prove (inaudible).

Mr. Martin: This is James Martin, attorney for the plain-

tiff, speaking into the record and our offer to prove at this time is that if the witness were permitted to testify and answer the previous question as to who hired him to investigate this accident on April 6, 1967, his answer would be the Town and Country Mutual Insurance Company."

In *Pickett* v. *Kolb*, 250 Ind. 449, 237 N. E. 2d 105 (1968), our Supreme Court, when confronted with a similar situation, stated:

\* \* \* \* \* \*

"It has long been the law in all jurisdictions of which we are aware that a witness may properly be cross-examined with respect to his interest in the litigation in question. He may be cross-examined with reference to his motives, his feelings, friendly or unfriendly towards the parties or other witnesses involved, his employment by either of the parties or some third party, and the contractual relationship with reference to his interest in the litigation and any financial considerations that might have influenced him. 30 I.L.E., Witnesses § 21." 237 N. E. 2d 107

\* \* \* \* \* \*

"In other words, proof of liability insurance in and of itself is not admissible, but such a principle may not be expanded to the extent that it serves as a means of excluding otherwise competent evidence which is relevant to the issues involved in the trial. We do not think that a trial court may arbitrarily exclude otherwise competent and relevant evidence merely on the ground that it will reveal an insurance carrier is involved.

In this case, as previously stated, if a party sees fit to present a witness on his behalf, the opposing party has a right to cross-examine that witness with reference to all of his interests in the litigation, including who is compensating him or giving him anything of value which resulted in his being a witness or participating actively in the litigation." 237 N. E. 2d 108

The Appellant contends that this case is squarely within the statement just quoted from *Pickett* v. *Kolb, supra,* and we agree. It is unfortunate that the published opinion in *Pickett* v. *Kolb* was not available to the trial judge when he made his ruling. Notwithstanding this, *Pickett* v. *Kolb* is a binding

precedent in this case on the trial court as it is on this court. As in *Pickett* v. *Kolb* the ruling of the trial court is reversible error. Therefore, this case should be and is reversed and remanded with instructions to grant Appellant's Motion for a New Trial.

Reversed and remanded. Costs v. Appellee.

White, J., concurs; Pfaff, C.J., concurs with opinion in which Hoffman, J., concurs.

## CONCURRING OPINION

PFAFF, C.J.—The majority opinion has, without doubt on my part, correctly applied and employed the rationale of the Supreme Court decision in the case of *Pickett* v. *Kolb* (1968), 250 Ind. 449, 237 N. E. 2d 105. We are, of course, not at liberty to disregard or disavow that which the Supreme Court has stated to be the law on this subject. However, I believe it essential to suggest that while the Supreme Court ruling allowing the opposing party the right to cross-examine an "interested" witness so as to elicit prejudice or bias is seemingly desirable, application of this rule is, in my opinion, virtually impossible. While the Supreme Court decision upholds the validity of the prior rule disallowing the admission of evidence which tends to prove the existence of liability insurance, at the same instance it permits admission of evidence which refers to the interest of a witness in the litigation, including by whom he was retained and compensated. In many instances the direct result of admitting evidence of this nature in order to elicit the interest of the witness in the litigation, will be to place before the jury evidence that there exists some form of liability insurance. I refer not to those situations where proof of liability insurance is allowable to establish either a cause of action or a defense, as in these instances there is no problem. My doubts as to the wisdom of the Supreme Court's binding precedent in *Pickett* v. *Kolb*, *supra*, concern those cases in which insurance is not essential to a

party's claim or defense. In those situations, it would seem impossible to determine whether the cross-examination of the witness for the purpose of showing interest, motive, feeling, etc., toward the litigation, is limited to elicitation of only those facts or whether it is intended to go further, to the point of injecting the issue of insurance. Further, jurors, upon hearing even evidence of interest, motive or feeling can reasonably be expected to presume that insurance is involved. Thus, although there may not be an objective statement of the fact that a party is insured, evidence admitted which shows interest, motive or feelings may have the same ultimate result.

As we are bound by precedent, I concur in the law as correctly applied by the majorty opinion. However, I reiterate that while the evidence declared admissible in *Pickett* v. *Kolb, supra,* is desirable, the practical effect of its admission is, in my opinion, often likely to constitute an unwarranted and prejudicial injection of the element of insurance.

To me, it would seem more prudent to follow the reasoning of the Appellate Court decision in *Pickett* v. *Kolb* (1968), 250 Ind. 449, 231 N. E. 2d 856, which disallowed, on the theory of *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N. E. 2d 633, admission of all evidence tending to show insurance, or to abrogate altogether the evidentiary restrictions pertaining to insurance coverage of the defendant in a damage action growing out of an automobile accident.

Hoffman, J., concurs.

NOTE.—Reported in 251 N. E. 2d 846.