Patricia Ann (Lepper) OWENSBY,
Appellant–Defendant,

v.

Kevin Joseph LEPPER,
Appellee–Plaintiff.

No. 49A02–9501–CV–48.

Court of Appeals of Indiana.

June 10, 1996.

Rehearing Denied Sept. 20, 1996.

Christopher C. Zoeller, Zoeller & Zoeller, Indianapolis, for Appellant.

Maxine T. Bennett, Rucker Bennett & Kertis, Indianapolis, for Appellee.

**OPINION.**

FRIEDLANDER, Judge.

Patricia Anne (Lepper) Owensby challenges the trial court's order in favor of her former husband, Kevin Joseph Lepper, granting custody of the parties' minor son to Lepper and awarding Lepper five percent of Owensby's military pension.

We affirm in part and reverse in part.

The facts favorable to the judgment are that Owensby gave birth to the parties' only child, J.L., on May 9, 1989. In November, 1989, Owensby and Lepper were married. Approximately two years later, on May 31, 1991, Owensby filed a petition for dissolution of marriage in the Superior Court of Marion County. A final hearing was held on June 21, 1994, after which the court entered its findings of fact and conclusions of law granting Lepper custody of J.L. and awarding Lepper five percent of Owensby's military pension. Owensby and Lepper present five issues for review:

1. Did the trial court err when it admitted a report of the Criminal Investigation Division of the United States Army over Owensby's objection?

2. Did the trial court err when it sustained Lepper's objection to a psychologist's report offered by the court-appointed special advocate (CASA) and Owensby?

3. Was the trial court's decision to award Lepper custody clearly erroneous?

4. Did the trial court err when it included Owensby's unvested military pension in its distribution of the parties' marital assets?

5. Should Owensby be required to pay costs incurred by Lepper in supplementing the record on appeal?

1.

Owensby contends the trial court improperly admitted Lepper's Exhibit Z into evidence. The exhibit consisted of documents compiled by the Criminal Investigations Division of the United States Army during its investigation of Owensby for the offenses of wrongful possession of marijuana,

wrongful use and distribution of marijuana, larceny and obstruction of justice. The admissibility of evidence is within the sound discretion of the trial court. *Prange v. Martin,* 629 N.E.2d 915 (Ind.Ct.App.1994), *trans. denied.* We will reverse a trial court's decision to admit evidence for an abuse of discretion only when it is clearly erroneous and against the logic and effect of the facts and circumstances of the case or the reasonable inferences to be drawn therefrom. *Simon v. Clark,* 660 N.E.2d 634 (Ind.Ct.App.1996).

 At trial, Owensby objected to the admission of Exhibit Z on the basis that it was not properly authenticated. Although Owensby's precise argument on appeal is somewhat unclear, we conclude that her challenge is based upon the fact that the evidence constitutes inadmissible hearsay. To preserve an error for review on appeal, the specific objection relied upon on appeal must have been stated in the trial court as the basis for the objection. *Darlage v. Drummond,* 576 N.E.2d 1303, 1309–1310 (Ind.Ct. App.1991). Although Owensby's counsel referred to the contents of Exhibit Z as hearsay, the substance of her objection at trial was that the documents were not properly authenticated. She has therefore waived her hearsay objection. Likewise, Owensby has waived her argument regarding authentication, inasmuch as she failed to raise the contention in her appellant brief. Failure of a party to raise an issue on appeal results in waiver of that issue. *Malone v. Malone,* 659 N.E.2d 636 (Ind.Ct.App.1995).

██ Even assuming Owensby did not waive her argument, and that the exhibit was improperly admitted, the error was harmless. Ind.Rules of Procedure, Trial Rule 61. We reject Owensby's assertions that the exhibit was "central to the court's ultimate decision regarding [J.L.'s] custody", Appellant's Brief at 36, inasmuch as Exhibit Z was cumulative of other evidence of record supporting the trial court's decision to award custody to Lepper. *See* Issue 3, *infra; Pruitt v. State,* 622 N.E.2d 469 (Ind.1993).

### 2.

██ Owensby contends the trial court erroneously sustained Lepper's objection to a clinical psychologist's report ordered by the court and offered by the CASA and Owensby at the custody hearing. The record shows that the court, in a February 2, 1994 decree, ordered Dr. Richard Lawlor, at his discretion, to either update an earlier report he had compiled concerning J.L.'s half-sister in a matter unrelated to the custody dispute, or to conduct a new evaluation. *Record* at 277. After taking the issue under advisement, the trial court stated:

> At the trial, the Court took under advisement the admissibility of a written report by Dr. Richard Lawlor, a clinical psychologist. In an earlier order, the Court had directed that Dr. Lawlor update a previous . . . report which had essentially involved [J.C.], Wife's daughter by a prior relationship. The first report is referenced in one of the [Marion County Domestic Relations Counseling Bureau] evaluations. Without interviewing Husband, and without a request from the Court, Dr. Lawlor submitted the report directly to the Court, *ex parte,* just prior to trial. The Court then granted the Husband's Motion to Strike the report. The Wife offered the report as an exhibit at trial, over Husband's objection that the report did not constitute an exception to the hearsay rule under the new Indiana Rules of Evidence. The report does not comport [sic] to be a physical or mental evaluation of the parties, and is not then a Trial Rule 35 report, and Dr. Lawlor did not comply with the specific requirements of I.C. 31–1–11.5–22(c), the report is not one anticipated by I.C. 31–1–11.5–22. The report is hearsay and cross-examination is impossible, and Dr. Lawlor's report is not admissible, however relevant.

Finding of Fact 13, *Record* at 319–320. Owensby contends the evaluation was admissible as a report issued pursuant to Ind.Code Ann. § 31–1–11.5–22 (West Supp.1995) which states, in relevant part:

> (a) In custody proceedings after evidence is submitted upon the petition, if a parent or the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for

the child. The investigation and report may be made by:

(1) the court social service agency;

(2) the staff of the juvenile court;

(3) the local probation department or the county office of family and children;

(4) a private agency employed by the court for the purpose; or

(5) a guardian ad litem or court appointed special advocate appointed for the child by the court under section 28 of this chapter.

(b) In preparing his report concerning a child, the investigator may consult any person who may have information about the child and his potential custodian arrangements. Upon order of the court, the investigator may refer the child to professional personnel for diagnosis. The investigator may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past without obtaining the consent of the parent or the child's custodian; but the child's consent must be obtained if he is of sufficient age and capable of forming rational and independent judgments. If the requirements of subsection (c) are fulfilled, the investigator's report may be received in evidence at the hearing, and it shall not be excluded on the grounds that it is hearsay or otherwise incompetent.

We conclude that IC § 31–1–11.5–22 does not apply to the facts of the present case. As stated in finding of fact number thirteen, the court ordered the report upon its own motion prior to its reception of the evidence. Furthermore, although Dr. Lawlor's report is one that an investigator appointed by the court pursuant to the statute is entitled to rely upon (IC § 31–1–11.5–22(b)), it is not the type of comprehensive report anticipated by the statute.

■ Despite the inapplicability of IC § 31–1–11.5–22 to the facts of this case, we conclude the evaluation was admissible under IC § 31–1–11.5–21(e) (West Supp.1995), which states that in custody disputes:

The court may seek the advice of professional personnel whether or not they are employed on a regular basis by the court.

The advice given shall be in writing and shall be made available by the court to counsel upon request. Counsel may call for cross-examination of any professional personnel consulted by the court.

In the present case, Dr. Lawlor submitted a written report to the court in conformance with the statute. Lepper contends that, despite its statutory compliance, the evaluation constitutes inadmissible hearsay that was not properly authenticated at trial.

■ Hearsay is an out-of-court statement made by a declarant offered to prove the truth of the matter asserted therein. Indiana Rule of Evidence 802. Hearsay rests on the credibility of an out-of-court declarant who is unavailable for cross-examination and hearsay statements are therefore generally inadmissible. *Mundy v. Angelicchio*, 623 N.E.2d 456 (Ind.Ct.App.1993). To obviate concerns over hearsay when a court utilizes IC § 31–1–11.5–21(e), the legislature inserted a provision in the statute permitting counsel to call for cross-examination of any professional consulted by the court. Despite this express provision, Lepper did not call for the cross-examination of Dr. Lawlor but instead moved to strike the document. The court granted Lepper's motion on the basis that the submission of the document was an improper *ex parte* communication. We conclude that the trial court inappropriately struck the evaluation, inasmuch as it was not an improper *ex parte* communication, but was submitted to the court pursuant to the court's February 2, 1994 order and IC § 31–1–11.5–21(e). Lepper could have challenged the report, as set forth in IC § 31–1–11.5–22(e), by calling for cross-examination of Dr. Lawlor. The court improperly sustained Lepper's objection to the evaluation.

■ Error in the exclusion of evidence justifies reversal only when the error relates to a material matter or is of a character which substantially affects the rights of the parties. *State v. Eaton*, 659 N.E.2d 232 (Ind.Ct.App.1995). Although the court committed error in rejecting Dr. Lawlor's report, we conclude Owensby did not suffer prejudice as a result of the exclusion. Owensby contends exclusion of the report was detri-

mental in that Dr. Lawlor's conclusions supported her fitness as a parent. To the contrary, the evaluation did not focus on the fitness of either Owensby or Lepper as a parent, but rather focused upon J.L.'s reaction to the bitterness of his parents' divorce. In fact, the report included a statement by J.L. that "he has fun when he is with his father". *Record* at 860. The evaluation did not contain any suggestions to the court regarding the custodial arrangement that would best serve J.L.'s interests. Rather, Dr. Lawlor simply concluded J.L. would benefit from counseling in dealing with his parents' acrimonious divorce. In sum, exclusion of the report was harmless.

### 3.

 Owensby contends the trial court's judgment awarding custody to Lepper was clearly erroneous. At the heart of Owensby's argument is the allegation that the trial court improperly awarded custody to Lepper to punish Owensby for her previous acts of contempt. Pursuant to Lepper's request, the trial court entered special findings of fact and conclusions of law. In reviewing a judgment supported by special findings, we determine whether the evidence supports the findings and the findings support the judgment. *Chidester v. City of Hobart,* 631 N.E.2d 908 (Ind.1994). We may not set aside the findings or judgment unless clearly erroneous. Ind.Rules of Procedure, Trial Rule 52(A). A judgment is clearly erroneous when examination of the record leaves us with the firm conviction that a mistake has been committed, even though there is evidence to support the trial court's decision. *Roebel v. Kossenyans,* 629 N.E.2d 241 (Ind.Ct.App.1994). In reaching our determination, we do not reweigh the evidence, but consider the evidence most favorable to the judgment of the trial court together with all reasonable inferences therefrom. *Chidester, supra.*

 In making custody decisions, the trial court must determine what is in the best interests of the child. IC § 31–1–11.5–21 (West Supp.1995). The court may not issue a custody order for the purpose of punishing a parent. *Marshall v. Reeves,* 262 Ind. 107,

311 N.E.2d 807 (1974). The trial court found that Owensby denied Lepper visitation for a period of seven months prior to February, 1994. Furthermore, Owensby attempted to interrupt Lepper's rightful visitation over the 1994 Memorial Day weekend by requesting law enforcement officers to retrieve J.L. from Lepper's rightful custody. The trial court also found that Owensby unjustifiably denied Lepper visitation on Father's Day. The trial court stated in its findings of fact that "[a]s a result of [Owensby's] efforts to come between [Lepper] and the child, the relationship between the child and [Lepper] was harmed, and the child became temporarily terrified of [Lepper]." *Record* at 316. The court went on to state that "[u]nder the circumstances, it is obvious that [Owensby] is unable to foresee the consequences of her behavior, and it is likely that if [Owensby] were granted custody, she would continue to interfere with visitation, until the damage to the child and the parental relationship would be irreversible." *Record* at 317. These findings express the court's concern regarding the effect of Owensby's behavior on J.L. and plainly illustrate that the court did not award Lepper custody in retaliation for Owensby's contemptuous behavior. We additionally reject Owensby's argument that the court's finding that her behavior was unjustifiable was not supported by the record, inasmuch as such argument is a mere request that we reweigh the evidence, which we may not do. *Chidester, supra.*

 During the final hearing, Lepper testified that Owensby used marijuana during their marriage. Lepper also informed the court that Owensby was inattentive to J.L.'s needs, leaving him with inadequate care providers for inappropriate amounts of time. Beth Ann Dorsey, who had been one of Owensby's close friends, testified that Owensby had used marijuana in the presence of J.L. when Owensby, Dorsey and J.L. were travelling in an automobile. Timothy Webb, a former housemate of Owensby's, corroborated Dorsey's testimony regarding Owensby's use of marijuana, and stated that Owensby also used Valium and "little red pills" that caused her to become "hyper". *Record* at 638–639. Webb also testified regarding

Owensby's frequent absences, lack of attention to her children and inappropriate physical punishment of J.L.'s half-sister. Although the CASA recommended that custody remain with Owensby, the court's findings support its decision to award custody to Lepper. Owensby's argument to the contrary is another request that we engage in the prohibited activity of reweighing the evidence. The trial court entered findings which were supported by the record, and its judgment was not clearly erroneous.

### 4.

■ Owensby contends the trial court erred when it awarded Lepper five percent of Owensby's military pension benefits. Lepper concedes the court's action was erroneous, but argues that the error was harmless, inasmuch as the order cannot be enforced against the United States Army.

The term "property" in the context of a dissolution action includes "all the assets of either party or both parties, including ... the right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a), acquired during the marriage, that is or may be payable after the dissolution of marriage." IC § 31–1–11.5–2(d)(3) (West Supp.1995). In *In re Marriage of Battles*, 564 N.E.2d 565 (Ind.Ct.App.1991), we concluded that the plain language of IC § 31–1–11.5–2(d)(3) requires that in order for disposable retired or retainer pay to constitute property within the scope of the dissolution act, the right to receive the pay must be acquired during the marriage. The parties in the present case agree that Owensby had not yet acquired the right to receive military pension benefits at the time of the dissolution. We therefore reverse that part of the trial court's judgment awarding a portion of the pension to Lepper.

### 5.

During this appeal, Lepper petitioned this court for leave to supplement the record, inasmuch as two custody evaluations conducted by the Marion County Domestic Relations Counseling Bureau were not included in the original record prepared by the Marion County Clerk. We granted Lepper's motion, and now Lepper requests that we order Owensby to pay the costs incurred in preparing the supplement.

■ When a record is incomplete, an appellee need not file an additional transcript, but may point out the omissions of the appellant. *Briggs v. Clinton County Bank & Trust Co. of Frankfort, Ind.*, 452 N.E.2d 989 (Ind.Ct.App.1983). We may then, in our discretion, order the additional documents or evidence transcribed. *Id.* If the appellee feels constrained to praecipe portions of the record and to submit those portions to us, we may, in appropriate circumstances, tax the costs thereof to the appellant. *Id.* On the other hand, an appellant need not request the entire record on appeal. Our Indiana Rules of Procedure state that "neither party shall request parts of the record or a transcript of the proceedings which are not needed for the issues to be asserted upon the appeal, including without limitation the following ... evidence or parts thereof which is not involved in the appeal or related to the error claimed". Appellate Rule 7.2(B).

■ Lepper argues Owensby referred to evaluations conducted by the Marion County Domestic Relations Counseling Bureau in her appellant's brief and therefore should have included the evaluations in her submission of the record. Owensby contends that all references to the Bureau in her brief were self-explanatory and that the evaluations were not provided as a matter of course by the court reporter or the clerk. In *Briggs*, we assessed the cost of an additional transcript to the appellant where the "record was a hodgepodge of documents and evidence presented in no chronological order," *id.* at 1014, and relevant evidence was omitted from the original record. In that case, we found that the record submitted by the appellee aided our review of the issues.

We conclude that Lepper's submission of the supplemental record was not necessary to aid our review. Although the trial court took the evaluations into account when rendering its judgment, sufficient evidence independent of the evaluations was presented to support the trial court's decision. Lepper was not required to file an additional transcript, but had the option of directing our

attention to the omission so that we, in our discretion, might order the additional documents or evidence transcribed. In any event, the allowable costs of producing the supplemental record (copying and postage expenses) were *de minimis*. The remainder of the expenses requested by Lepper constitute attorney and paralegal fees, which are not recoverable. Ind.Code Ann. § 34–1–32–1 (West Supp.1995) allows recovery of attorney's fees as part of the costs to a prevailing party when the other party has raised a frivolous, unreasonable or groundless claim or defense, has continued to litigate a claim or defense after it has become frivolous, unreasonable, or groundless, or has litigated the action in bad faith. Inasmuch as the Marion County Domestic Relations Counseling Bureau reports were not necessary to our disposition of this case, we conclude that Owensby did not omit the reports from the record in bad faith. The costs of preparing the supplemental record should be allocated to Lepper.

Judgment affirmed in part and reversed in part.

HOFFMAN, J., concurs.

SULLIVAN, J., concurs in result as to Issue 1 and fully concurs as to all other issues.